Nirmal Singh DHANGU,
Petitioner-Appellant,

v.

IMMIGRATION AND NATURALIZATION SERVICE,
Respondent-Appellee.

Nos. 85–2926, 85–7625.

United States Court of Appeals,
Ninth Circuit.

Argued July 16, 1986.

Submitted March 2, 1987.

Decided March 6, 1987.

Martin Resendez Guajardo, San Francisco, Cal. for petitioner-appellant.

Larry Gallagher, San Francisco, Cal. and Marshall Golding, Washington, D.C., for respondent-appellee.

Before BROWNING, Chief Judge, FLETCHER and NELSON, Circuit Judges.

FLETCHER, Circuit Judge:

In this consolidated action, Nirmal Singh Dhangu appeals the district court's dismissal of his habeas corpus petition, which requests review of the district director's denial of a stay of deportation. Dhangu also petitions this court for review of an immigration judge's order of deportation, contending that a deportation hearing in absentia deprived him of due process. We affirm the district court's dismissal of the habeas petition, because Dhangu already had received the relief that he sought. We also dismiss the petition for review because Dhangu's due process claim first should be addressed by the Board of Immigration Appeals.

## I. BACKGROUND

In 1982, an immigration judge (IJ) found Nirmal Singh Dhangu deportable for entry without inspection, under section 241(a)(2) of the Immigration and Nationality Act, 8 U.S.C. § 1251(a)(2). Dhangu is a thirty-one-year-old native and citizen of India, who claims that he entered the United States illegally to escape persecution in India because of his religion and political affiliations. The IJ granted Dhangu the option of voluntarily departing, or of continuing the hearing to apply for asylum. Dhangu retained an attorney to file an asylum application on his behalf.

Three years later, in July 1985, the Immigration Court notified the attorney who had filed Dhangu's asylum application (the attorney of record), that Dhangu's case would be heard the following month on August 12. The court did not send Dhangu any notification of the hearing. Although Dhangu had moved several times, he contends that he apprised the Immigration and Naturalization Service (INS) of all address changes between 1982 and 1985.

Dhangu admits he did not contact his attorney of record after 1982. He states that he did not do so because he believed that the attorney's services were no longer required. When the attorney received the Immigration Court's notice of hearing, he apparently sent the notice to Dhangu's last known address, where, unfortunately, Dhangu no longer lived. Dhangu never received the notice, and therefore did not appear at the hearing. Nor did his attorney.[1]

On August 12, 1985, the IJ held the deportation hearing in absentia, as permitted under 8 U.S.C. § 1252(b). The purpose of the hearing was to consider Dhangu's eligibility for asylum, withholding of depor-

---

1. In his denial of Dhangu's request for a stay of deportation, the INS district director assumed erroneously that the attorney did attend the hearing. The district director relied on this assumption in discounting Dhangu's credibility. On appeal, the INS admits that no one attended the deportation hearing on Dhangu's behalf.

tation, and voluntary departure.[2] The IJ denied the relief requested for failure to prosecute, and ordered Dhangu deported.

In October 1985, the INS sent Dhangu a letter at his correct address, notifying him of the IJ's deportation order and demanding that he report for departure to India on November 12, 1985. According to Dhangu, this was his first inkling of the events that had transpired. After receiving the letter, Dhangu retained his present counsel, reported for deportation as ordered on November 12, and then zealously pursued several avenues of relief.

On November 12, Dhangu requested a stay of deportation from the INS district director. The district director denied the stay. On November 21, Dhangu filed a habeas corpus petition in the district court, requesting a review of the district director's decision.

Also on November 12, Dhangu filed with the IJ a motion to reopen the deportation proceedings and a request for stay. The IJ denied this motion on November 26, and Dhangu appealed the IJ's decision to the Board of Immigration Appeals (BIA). Dhangu asserts that the BIA refused to consider his telephonic request for a stay at that time.[3] The BIA has not acted on Dhangu's motion to reopen.

On November 13, Dhangu filed in the court of appeals, a petition for review of the IJ's August 1985 deportation order, thus triggering the statutory automatic stay of his deportation. As a result, on December 6, the district court dismissed Dhangu's habeas petition for lack of subject matter jurisdiction. The district court reasoned that the filing of the petition for review in the court of appeals vested the appellate court with exclusive jurisdiction to review all INS decisions related to Dhangu's deportation. The district court also concluded that the automatic stay rendered

moot any request for a discretionary stay of deportation. Dhangu timely appeals.

We consolidated Dhangu's petition for review and his appeal of the denial of the habeas corpus petition to review both in this proceeding. Dhangu is currently free on bond.

## II. DISCUSSION

### A. The District Court's Subject Matter Jurisdiction

In his habeas petition, Dhangu argued that the district director abused his discretion in denying Dhangu's request for a stay, because the director relied on irrelevant facts and incorrect assumptions. Nothing in Dhangu's habeas petition can be construed as a request to review the August 1985 deportation order, the matter that Dhangu placed before this court in his November 13 petition for review. Nevertheless, the district court presumed that Dhangu sought habeas review of the deportation order, in addition to a review of the district director's discretionary denial of the stay. The district court did not address the merits of either issue, however, because it held that it lacked subject matter jurisdiction over both.

Because we conclude that Dhangu never requested the district court to review the deportation order, we do not address whether the court erred in declining to reach the merits of that issue. We review de novo the district court's dismissal of Dhangu's petition to review the district director's discretionary decision on the basis that it lacked subject matter jurisdiction. *See Palmerin v. City of Riverside,* 794 F.2d 1409, 1411 (9th Cir.1986) (issues of law are reviewed de novo).

The district court held that, under habeas jurisdiction, its power to review INS discretionary decisions is limited to those cases in

---

**2.** Dhangu also argues in his motion to reopen before the BIA that the IJ should not have entered a final order of deportation in absentia, in view of the IJ's entry of an alternate order of voluntary departure.

**3.** In his brief, Dhangu states that the BIA would not consider the stay request because a petition

for review was pending in the court of appeals. At oral argument, the INS confirmed that Dhangu had requested a stay from the BIA, and pointed out that the request was not made until after Dhangu had filed a petition for review, which triggered the automatic stay.

which "deportability itself is not an issue." The court stated that when "the denial of discretionary relief is being appealed together with the final order of deportability, both issues should be decided by the court of appeals."

The district court based its holding on cases that have interpreted section 106(a) of the Act, 8 U.S.C. § 1105a(a), which vests jurisdiction to review final orders of deportation in the court of appeals, and section 106(a)(9), which provides for habeas corpus jurisdiction. The district court misconstrued these cases.

Section 106(a) provides for direct review in the court of appeals of all final orders of deportation, entered pursuant to a deportation proceeding conducted by a special inquiry officer under § 242(b), 8 U.S.C. § 1252(b). Congress enacted section 106(a) to expedite judicial review of deportation proceedings and thwart the use of dilatory tactics. *See Foti v. INS*, 375 U.S 217, 224–26, 232, 84 S.Ct. 306, 311–12, 315, 11 L.Ed.2d 281 (1963); *Williams v. INS*, 795 F.2d 738, 742 (9th Cir.1986).

The court of appeals' exclusive jurisdiction encompasses not only review of the deportation order, but also those "determinations made during and incident to the administrative proceeding conducted by a special inquiry officer, and reviewable together by the [BIA], such as orders denying voluntary departure ... and orders denying the withholding of deportation...." *Foti*, 375 U.S. at 229, 84 S.Ct. at 314.

In *Foti*, the Supreme Court noted that the IJ's decision as to suspension of deportation is an integral part of the deportation proceeding itself, and, if granted, eliminates the need for a deportation order. *Id.* at 223, 84 S.Ct. at 310. The Court held that such a request for discretionary relief is "ancillary to the deportability issue, and both determinations should therefore be made by the same court at the same time." *Id.* at 227, 84 S.Ct. at 313.[4]

In a later decision, the Supreme Court held that the court of appeals' exclusive jurisdiction extends to review of BIA decisions on motions to reopen proceedings under § 242(b). *Giova v. Rosenberg*, 379 U.S. 18, 85 S.Ct. 156, 13 L.Ed.2d 90 (1964) (per curiam); *see Williams*, 795 F.2d at 742.

In *Cheng Fan Kwok v. INS*, 392 U.S. 206, 88 S.Ct. 1970, 20 L.Ed.2d 1037 (1968), the Supreme Court addressed whether ancillary determinations that ultimately affect deportation but which are not made during the section 242(b) deportation proceeding fall within the scope of section 106's exclusive jurisdiction. *Kwok* involved an alien, already under a final order of deportation, who had requested a stay of deportation from the district director, pending disposition of a request for adjustment of status. The court of appeals had dismissed the alien's appeal of the district director's denial of stay for lack of jurisdiction. The Supreme Court stated that the district director's interim decision was neither a "final order" nor, as was the case in *Foti*, was it entered "in the course of administrative proceedings conducted under § 242(b)." *Id.* at 212, 88 S.Ct. at 1974.

The Supreme Court thought it significant that the district director's order was "issued more than three months after the entry of the final order of deportation, in proceedings entirely distinct from those conducted under § 242(b), by an officer other than the special inquiry officer who ... presided over the deportation proceeding." *Id.* at 212–13, 88 S.Ct. at 1974–75 (footnotes omitted). Moreover, while the petitioner's stay request was based on a pre-existing final order of deportation, the petitioner "did not 'attack the deportation order itself but instead [sought] relief not inconsistent with it.'" *Id.* at 213, 88 S.Ct. at 1975 (quoting *Mui v. Esperdy*, 371 F.2d 772, 777 (2d Cir.1966), *cert. denied*, 386 U.S. 1017, 87 S.Ct. 1372, 18 L.Ed.2d 454

---

**4.** *Sotelo Mondragon v. Ilchert*, 653 F.2d 1254, 1256 (9th Cir.1980) was a case in which we held that the district court, rather than the court of appeals, should review the ancillary discretionary decision made during the deportation proceeding itself. However, in *Sotelo Mondragon*,

the district court, sitting in habeas, was *also* reviewing the deportation order. Thus, guided by *Foti*, we concluded that the deportability issue and the denial of ancillary relief "ought to be reviewed together."

(1967)). The Court held that the court of appeals exclusive jurisdiction under section 106(a) does not encompass review of a district director's discretionary stay decision.[5]

Although the court of appeals will not review a district director's, an IJ's, or the BIA's interim discretionary decision to deny a stay,[6] district courts do have jurisdiction to review such decisions. *Williams*, 795 F.2d at 742; *Kemper v. INS*, 705 F.2d 1150, 1150 (9th Cir.1983) (court of appeals dismissed petitioner's request for review of the BIA's denial of a motion to stay pending a ruling on a motion to reopen, but stated that "[p]etitioner may seek appropriate relief in district court [through habeas review]"); *Sotelo Mondragon v. Ilchert*, 653 F.2d 1254, 1256 (9th Cir.1980) (district court has habeas jurisdiction to review denials of stays where proceedings are separate from the deportation proceedings); *Lopez-Alegria v. Ilchert*, 632 F.Supp. 932, 935 (N.D.Cal.1986) (district court has habeas jurisdiction to review district director's denial of stay while motion to reopen is pending); *Maldonado de Vasquez v. Ilchert*, 614 F.Supp. 538, 540 (N.D. Cal.1985) (finding that the district court had habeas jurisdiction to review the district director's denial of a stay while the petitioner's motion to reopen was pending before the IJ).[7]

■ None of the cases upon which the district court relies preclude habeas corpus

review of the district director's decision in this case. The stay denial was not a discretionary decision that was incident to the original § 242(b) proceeding, but was a subsequent, "entirely distinct" proceeding. The granting of a stay pending the BIA's consideration of the motion to reopen did not "attack the deportation order itself," *Kwok*, 392 U.S. at 213, 88 S.Ct. at 1975, nor was it a "determination[ ] ... on which the final order of deportation [was] contingent." *Chadha*, 634 F.2d at 413. The district court erred in concluding that the mere pendency of other proceedings in which the deportation order was at issue stripped it of jurisdiction.

■ Despite this error, we affirm the dismissal of the habeas petition on other grounds. When Dhangu filed the petition, his deportation already had been stayed by the filing of the petition for review in this court. Since the only relief Dhangu requested from the district court was a stay of deportation, there was no need for the district court to issue the requested injunction prohibiting deportation. *See Daneshvar*, 644 F.2d at 1251 n. 6 (noting that petitioner might not need the protection of the district court's stay, because the petitioner also was protected by the Sixth Circuit's stay, pending its decision on his motion to reopen); 13A C. Wright, A. Miller, E. Cooper, *Federal Practice and Proce-*

5. *See also Chadha v. INS*, 634 F.2d 408, 413 (9th Cir.1980) (court of appeals can review the "legal validity of determinations on which the final order of deportation is contingent"; no jurisdiction exists to review denial of a stay of deportation, which is an order not controlled by § 242(b), but constitutes independent discretionary relief sought *after* a final order of deportation has been entered), *aff'd*, 462 U.S. 919, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983); *Ruiz-Mancilla v. INS*, 571 F.2d 510, 511 (9th Cir.1978) (per curiam) (The BIA's denial of a stay pending a motion to reopen is not directly reviewable by the court of appeals).

6. Once the motion to reopen is before the court of appeals, then the BIA's and IJ's discretionary denials of a stay can be reviewed by this court, as decisions "incident" to the proceedings on the motion to reopen. *See Reyes v. INS*, 571 F.2d 505, 507 & n. 1 (9th Cir.1978) (per curiam) (also distinguishing stays entered by the BIA or special inquiry officer from those entered by dis-

trict directors because their power is derived from a different statutory authority).

7. *See also Bothyo v. Moyer*, 772 F.2d 353, 355 (7th Cir.1985) (habeas court may review district director's stay denial pending motion to reopen); *Daneshvar v. Chauvin*, 644 F.2d 1248, 1251 (8th Cir.1981) (no habeas jurisdiction exists to review deportation order, but court can review discretionary denials of relief where deportability is not an issue); *Matter of Odeh*, 601 F.Supp. 25, 26–27 (N.D.Ill.1984) (same); *Bazrafsha v. Pomeroy*, 587 F.Supp. 498, 501 & n. 2 (D.N.J.1984) (same); *Te Kuei Liu v. INS*, 483 F.Supp. 107, 109 (S.D.Tex.1980) (had petitioner properly requested a stay from the district director, the district court could have reviewed the decision); *Besaganahalli v. United States*, 442 F.Supp. 60, 61 (W.D.Pa.1977) (district court could have reviewed stay issue, if it had been properly placed before the court, although the court could not review the deportation order itself).

*dure* § 3533.2 at 241–45 (1984) (if the decree of another tribunal accords full relief, then another proceeding seeking the same relief is moot); *New York v. Heckler,* 719 F.2d 1191, 1197–98 (2d Cir.1983) (Friendly, J., concurring and dissenting) (the case was moot because the relief requested could neither add to nor subtract from protection already afforded plaintiffs in another action).

Because the automatic stay rendered the requested relief unnecessary, denial of the petition was proper.

### B. Due Process Claim

Dhangu claims that he did not receive fair notice of the August 1985 deportation proceeding. He appears to argue that 8 U.S.C. § 1252(b), which authorizes in absentia hearings, and 8 C.F.R. § 292.5, which authorizes service of notice on the attorney of record instead of the alien, are unconstitutional. Dhangu argues that his interest in securing relief from deportation far outweighs the burden on the Immigration Court to provide him with personal notice. It is not entirely clear whether Dhangu is raising a facial challenge to the statute, or whether he is contending that fair notice was not provided in his case.

The INS contends that this court lacks jurisdiction to consider Dhangu's constitutional arguments. The INS states that 8 C.F.R. § 242.21 provides an alien with an appeal "as of right" to the BIA from an IJ's deportation order. Because Dhangu did not exhaust this administrative remedy first by appealing the IJ's deportation order to the BIA within the time allotted for such appeals, the INS argues that his petition to this court is barred.

Ordinarily, an alien is required to exhaust his administrative remedies by first appealing to the BIA before petitioning to this court. This is a jurisdictional requirement. *Forster v. INS,* 452 F.2d 418 (9th Cir.1971) (per curiam). Dhangu contends that exhaustion would be futile and is not required because the BIA has no jurisdiction to decide constitutional issues. *See Bagues-Valles v. INS,* 779 F.2d 483, 484 (9th Cir.1985); *Hernandez-Rivera v. INS,*

630 F.2d 1352, 1355 (9th Cir.1980); *Matter of Valdovinos,* I & N Int.Dec. 2929 (1982). Thus, Dhangu asserts that we may review his due process contention, even though he has not raised it previously. *See Bagues-Valles,* 779 F.2d at 484; *Reid v. Engen,* 765 F.2d 1457, 1461 (9th Cir.1985).

The INS counters that the mere assertion of futility does not eliminate the exhaustion requirement. The INS states that "the ultimate relief which petitioner seeks—rescission of the order for his deportation—was fully obtainable by an administrative appeal and subsequent judicial review if the outcome of the appeal was unfavorable to him."

The INS does not take full account of the unique procedural problem that Dhangu faces. The INS's statement that the ultimate relief sought was "fully obtainable" by administrative appeal must ring somewhat hollow in Dhangu's ears. The unspoken caveat is that the relief might be fully obtainable if the INS does not deport Dhangu first. The INS ignores the essence of Dhangu's claim: that he was not afforded the opportunity to file timely an administrative appeal because INS notice procedures, either generally, or as applied to him, are defective. Because he was unable to appeal, he is faced with deportation.

■ Nonetheless, we agree with the INS that Dhangu's claim properly is not before us. Dhangu is correct that it is not always necessary to raise constitutional issues prior to this court's review. However, if the BIA is permitted to address Dhangu's claims first, it may take action that would render unnecessary our consideration of constitutional issues. *See Rescue Army v. Municipal Court,* 331 U.S. 549, 568–69, 67 S.Ct. 1409, 1419, 91 L.Ed. 1666 (1947) (court will observe the rule of "strict necessity" in reaching constitutional issues). Even if the BIA did not address the constitutionality of the statute, it could reopen the proceedings on the basis that, in this case, the Immigration Court's procedures did not provide adequate notice to Dhangu. Thus, Dhangu's claim involves " 'procedural errors correctable by the administrative tribunal.' " *Bagues-Valles,* 779 F.2d at 484 (quoting *Reid v. Engen,* 765 F.2d at 1461).

Moreover, Dhangu's due process claim involves factual questions that we are not in a position to resolve.[8] *Roque-Carranza v. INS*, 778 F.2d 1373, 1374 (9th Cir.1985) (initial consideration of due process claim by 'the BIA develops an adequate record on appeal and avoids premature interference with agency processes). We cannot "say in advance of resort to [this] procedure that it is incapable of affording due process" to Dhangu, *see id.*, and therefore we will not consider his claim here. If his motion to reopen is denied, Dhangu may then challenge the BIA's refusal to reopen in this court. *Id.*

The petition for review filed is denied. The district court's dismissal of the habeas petition is affirmed. We stay our mandate for such time as is necessary for disposition of Dhangu's motion currently pending before the BIA. *Sida v. INS*, 783 F.2d 947, 951 (9th Cir.1986); *Roque-Carranza*, 778 F.2d at 1374; *Rodrigues-Agustin v. INS*, 765 F.2d 782, 784 (9th Cir.1985) (per curiam); *Alvarez-Ruiz v. INS*, 749 F.2d 1314, 1316 (9th Cir.1984) (per curiam).

---

8. There is some dispute whether Dhangu notified the INS that he no longer was represented by counsel; it is also unclear whether the INS is required to notify the Immigration Court of a petitioner's address changes. *See Villegas v. O'Neill*, 626 F.Supp. 1241, 1244–45 (S.D.Tex.

1986) (INS notifies the Immigration Court of all changes of address).